SONIA MARTIN (State Bar No. 191148)
DENTONS US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, California  94105
Telephone: (415) 267-4000
Facsimile: (415) 267-4198
Email: sonia.martin@dentons.com

MARK HANOVER (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 7800
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: mark.hanover@dentons.com

Attorneys for Defendant
ALLSTATE INDEMNITY COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| DEBORAH QUATTROCCHI,<br><br>Plaintiff,<br><br>vs.<br><br>ALLSTATE INDEMNITY COMPANY,<br><br>Defendant. | Case No. 2:17-cv-01578-JAM-EFB<br><br>DEFENDANT ALLSTATE INDEMNITY COMPANY'S:<br><br>(1) NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;<br><br>AND<br><br>(2) SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date: November 7, 2017<br>Time: 1:30 p.m.<br>Place: Courtroom 6<br>Before: Hon. John A. Mendez |

# NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND HER COUNSEL AND TO THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that on November 7, 2017, at 1:30 p.m. or as soon thereafter as counsel may be heard, in the United States District Court for the Eastern District of California, Sacramento Division, located at 501 I Street, Sacramento, California, Defendant, Allstate Indemnity Company ("Defendant" or "Allstate"), will move, and hereby does move, to dismiss Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state any cognizable claim for relief.

This Motion will be and is based upon this Notice, the following Memorandum of Points and Authorities, all pleadings, records and documents on file, and such additional evidence and argument as may be properly introduced in support of the Motion.

Dated: September 5, 2017

Respectfully submitted,

DENTONS US LLP

By: _____*/s/ Sonia Martin*_____
SONIA MARTIN

Attorneys for Defendant
ALLSTATE INDEMNITY COMPANY

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION.**

Plaintiff's First Amended Complaint ("Complaint" or "Compl.") fails as a matter of law and should be dismissed. Plaintiff's liability theory is that Defendant, Allstate Indemnity Company ("Defendant" or "Allstate"), violated the California Unfair Competition Law ("UCL"), in contravention of the terms of the automobile insurance policy it issued to Plaintiff, by: (a) requiring documentation of her claims when, in Plaintiff's view, the relevant coverage, Coverage CX, which is excess medical payments coverage expressly inapplicable where, as here, the subject medical bills are paid by another insurer, contains no such requirement; and (b) declining to pay Plaintiff's claims where a primary medical plan paid for the applicable medical treatment where the Plaintiff later reimbursed, out of proceeds from a settlement with the tortfeasor, the primary medical plan for the cost of such care. As demonstrated below, Defendant's alleged conduct is wholly consistent with and contemplated by the unambiguous terms of Plaintiff's automobile insurance policy, and is thus not actionable under the UCL. As is further demonstrated below, Plaintiff has no legal basis to recover restitution or injunctive relief under the UCL under the circumstances of this case.

For all these reasons, Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) based on its failure to state any cognizable claim for relief.

**II.    BACKGROUND.**

**Complaint Allegations.**

Plaintiff alleges that she purchased an Allstate automobile insurance policy that included a coverage called "Coordinated Medical Protection -- Coverage CX." (First Amended Complaint ("Compl. ") ¶ 1.) This excess coverage, as its name indicates, pays for certain medical expenses that are not covered and paid under a primary medical plan. (Compl. ¶ 2.) According to Plaintiff, she was in an automobile accident with an at-fault driver, suffered bodily injury that was treated under her primary medical plan (provided by Kaiser), and subsequently recovered money from the at-fault driver to resolve her third-party bodily injury claim. (Compl. ¶¶ 2-3.) Using the funds recovered from the at-fault driver, Plaintiff allegedly reimbursed Kaiser for the medical expenses it had paid.

Case No. 2:17-cv-01578-JAM-EFB              - 1 -              ALLSTATE'S MOTION TO DISMISS

1  (Compl. ¶ 3.)  By virtue of reimbursing Kaiser, Plaintiff contends that she has out-of-pocket medical

2  costs, which she allegedly submitted to Allstate for payment under Coverage CX.  (Compl. ¶ 3.)

3  According to Plaintiff, in response to her claim under Coverage CX, Allstate initially refused

4  to pay on the grounds that she was required to submit "the patient's health insurer's explanation of

5  benefits showing their payment consideration of the bill."  (Compl. ¶ 4.)  After Plaintiff allegedly

6  provided to Allstate the requested information, Allstate purportedly still refused to pay, which

7  supposedly violates the terms of Coverage CX.  (Compl. ¶ 5.)

8  Plaintiff brings this putative class action asserting one cause of action, for violation of the

9  California Unfair Competition Law, Business and Professions Code §§17200 *et seq.*  (Compl. ¶¶ 37-

10  47.)  According to Plaintiff, Section 17200 "precludes unfair competition, i.e., the employment of

11  any unlawful, unfair or fraudulent business acts or practices; and any unfair, deceptive, untrue or

12  misleading advertising violating Cal. Bus. & Prof Code section 17500.  This prohibition extends to

13  any act, statement, omission or conduct or pattern of activity engaged in within California which

14  affects the rights of consumers within the State of California and elsewhere."  (Compl. ¶ 38.)

15  Plaintiff alleges the Coverage CX provisions of her insurance policy mean that Allstate "will

16  pay for medical expenses for bodily injury under Coverage CX where the insured or qualifying claimant

17  has incurred and paid out-of-pocket for such medical expenses, including where the insured or

18  qualifying claimant has a Primary Medical Provider, and, after receiving medical care paid for by that

19  Primary Medical Provider, has reimbursed that Primary Medical Provider for those advanced expenses.

20  Further, this obligation to pay is not contingent nor dependent upon Coverage CX claimants submitting any

21  specific or required medical documentation including but not limited to 'a copy of the patient's health

22  insurer's explanation of benefits showing their payment consideration of the billing' (or other similar

23  documentation) as stated in Allstate's December 29, 2015 EOB to Plaintiff."  (Compl. ¶ 40.)

24  Plaintiff alleges Defendant has acted fraudulently in violation of the UCL through misleading

25  its insureds regarding the meaning of Coverage CX by:  (a) requiring documentation of claims when,

26  in Plaintiff's view, Coverage CX contains no such requirement; and (b) declining to pay claims

27  where a primary medical plain was involved in and advanced money for medical treatment even

28

Case No.  2:17-cv-01578-JAM-EFB           - 2 -                ALLSTATE'S MOTION TO DISMISS

where the insured has reimbursed the primary medical plan for the cost of such care.  (Compl. ¶ 42.)

Plaintiff claims to represent the following putative class:

> All California residents who, within the applicable statute of limitations preceding the filing of this action through class certification, have been Allstate automobile policy insureds with Coverage CX containing the same or substantially similar contract language to that set forth in Paragraphs 10-12 above.  This Class includes all Class Members and their resident relatives, including those not "made whole" within the meaning of California law, who:  (1) suffered a covered bodily injury; (2) reimbursed their primary medical plan for said medical expenses; and (3) either: (i) did not make a Coverage CX claim or (ii) made a Coverage CX claim which has been rejected or not paid.

(Compl. ¶ 25.)

On behalf of the putative class, Plaintiff seeks to recover:  equitable and/or injunctive relief; monetary relief including restitution and fluid recovery; attorneys' fees and expenses, and costs of suit; interest; and other relief as the Court deems proper.  (Compl. Prayer.)

**Plaintiff's Insurance Policy.**

Plaintiff alleges her insurance policy, a copy of which is submitted with Defendant's concurrently filed Request for Judicial Notice and may be considered as part of this Motion,[1] provides, in relevant part, that Coverage CX obligates Allstate to pay an insured person, which includes named insureds and resident relatives, for medical expenses incurred by insured persons who suffer bodily injury "while in, on, getting into or out of, or when struck by, an auto or trailer."  (Compl., ¶ 2.) Plaintiff concedes her policy provides that Coverage CX is excess coverage, and that "Allstate will not be liable to the extent that any elements of loss covered under Coordinated Medical Protection are paid, payable or required to be provided to or on behalf of you or a resident relative under the. provisions of any and all primary medical plans.  Coverage CX will apply on a primary basis to expenses for elements of loss which

---

[1] *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by* 307 F.3d 1119, 1125-26 (9th Cir.2002) (court may consider documents central to the complaint on a motion to dismiss); *Washington v. Biter,* No. 1:14-CV-01411-LJO, 2015 WL 4249989, at *1 (E.D. Cal. July 13, 2015), *report and recommendation adopted*, No. 1:14-CV-01411, 2015 WL 4617480 (E.D. Cal. July 31, 2015) ("courts may properly consider matters subject to judicial notice and documents incorporated by reference in the pleading without converting the motion to dismiss to one for summary judgment.").

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

are not covered under the primary medical plan applicable to you or resident relatives." (*Id.*)

The relevant policy provisions to which Plaintiff refers state, in full:

> Coverage CX applies to **you** and **resident** relatives on an excess basis only. This means that **Allstate** will not be liable to the extent that any elements of loss covered under Coordinated Medical Protection are paid, payable or required to be provided to or on behalf of **you** or a **resident** relative under the provisions of any and all **primary medical plans**.
>
> Coverage CX will apply on a primary basis to expenses for elements of loss which are not covered under the **primary medical plan** applicable to **you** or **resident** relatives.

(Policy, AU104-3, p. 4, emphasis in original.)

Plaintiff's policy also provides:

> **Proof of Claim; Medical Reports**
>
> As soon as possible, any person making claim must give **us** written proof of claim. It must include all details **we** may need to determine the amounts payable. **We** may also require any person making claim to submit to questioning under oath and sign the transcript.
>
> The injured person may be required to take medical examinations by physicians **we** choose, as often as **we** reasonably require. **We** must be given authorization to obtain medical reports and other records pertinent to the claim.

(Policy, AU104-3, p. 12, emphasis in original.)

### III. ARGUMENT

#### A. Plaintiff's Complaint Fails Based on the Unambiguous Language of Her Insurance Policy.

Section 17200 makes unlawful "three varieties of unfair competition -- acts or practices which are unlawful, or unfair, or fraudulent." *Santana v. First NLC Fin. Servs., LLC,* No. 08CV2228 JM (POR), 2009 WL 1657382, at *3 (S.D. Cal. June 12, 2009) (quoting *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. App. 4th 163, 180 (1999)). To bring a claim for violation of Section 17200, "a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice,' or (2) unfair, deceptive, untrue or misleading advertising. Thus, to state a claim under Section 17200, a plaintiff must establish that the practice is either unlawful (*i.e.*, is forbidden by law), unfair (*i.e.*, harm to victim outweighs any benefit), or fraudulent (*i.e.*, is likely to

1  deceive members of the public).” *Brumfield v. Dep't of Veteran Affairs*, No. 14-CV-04647-JSC,
2  2015 WL 294380, at *4 (N.D. Cal. Jan. 22, 2015) (citation and internal quotations omitted).

3  Where, as here, a plaintiff attempts to challenge a clear and unambiguous insurance policy (or
4  other contractual) provision under the UCL, courts have repeatedly dismissed the claim. For
5  example, in *Guerard v. CNA Fin. Corp.*, No. 4:09-CV-01801SBA, 2009 WL 3152055 (N.D. Cal.
6  Sept. 23, 2009), the plaintiff alleged the decedent was wrongfully denied benefits under a long term
7  care insurance policy for home health care services provided by her children. The court explained
8  the applicable insurance policy had an unambiguous provision stating the policy did not cover
9  services provided by family members. *Id.* at *2.

10  The court dismissed the plaintiffs' UCL claim in the face of this clear policy language, stating
11  the "interpretation of the clear and unambiguous terms of the policy cannot constitute an unfair,
12  unlawful or fraudulent act violative of Bus. & Prof. Code sections 17200 or 17500." *Id.* at *6. The
13  court also found the UCL allegations duplicative of the plaintiffs' deficient fraud claim and subject
14  to dismissal for similar reasons, including because "whatever was said, the conspicuous and
15  unambiguous exclusion in Ms. Garat's policy should have alerted her that services covered by family
16  members were excluded under her policy." *Id.* at *5.

17  Similarly, in *Baymiller v. Guarantee Mut. Life Co.*, No. SA CV 99-1566 DOC AN, 2000 WL
18  1026565, at *4 (C.D. Cal. May 3, 2000), the court dismissed the UCL claim on the ground that the
19  alleged misconduct -- supposedly misrepresenting how interest, dividends and cost of insurance
20  charges would be calculated, and whether premiums would "vanish" -- was wholly consistent with
21  the express language of the applicable insurance policies:

> The Court finds that Plaintiffs fail to state a cause of action for violation of the California Business and Professions Code § 17200 because Plaintiffs cannot establish that Guarantee Life's conduct was likely to deceive members of the public. Any allegedly deceptive marketing materials are directly contradicted by the express language of the insurance policies and such policies were fully integrated. . . . Furthermore Defendants' exercise of discretion cannot be a basis of deception, as it is expressly permitted under the unambiguous language of the insurance policies.

27  *Id. See also Roots Ready Made Garments Co., W.L.L. v. Gap, Inc.,* 405 F. App'x 120, 122-23 (9th

1  Cir. 2010) (affirming dismissal of UCL claim, stating: "Gap's termination of the Gap–Gabana
2  contract before Roots could recoup its investment in the excess inventory and in its Middle Eastern
3  retail network does not meet the requisite standard, because such conduct was permitted by the plain
4  terms of the contract, and the 'unfairness' prong of section 17200 does not give the courts a general
5  license to review the fairness of contracts.") (citation and internal quotation omitted).  These
6  holdings are consistent with the principle that the unambiguous terms of an insurance contract should
7  be enforced as written.  *See, e.g., Oceanside Pier View, L.P. v. Travelers Prop. Cas. Co. of Am.,* No.
8  07CV1174WQHPOR, 2008 WL 7822214, at*6 (S.D. Cal. May 6, 2008) ("where the plain language
9  of an insurance policy is clear and unambiguous, the court must enforce it as written and cannot
10 modify the contract or create ambiguity where none exists. . . .   Like all contracts, the whole of an
11 insurance policy is to be taken together, so as to give effect to every part.") (citations and internal
12 quotations omitted).

13 UCL claims have also been dismissed in other situations similar to the instant one, where the
14 face of the complaint demonstrated none of the UCL elements could be met.  For example, in
15 *Santana*, the plaintiffs alleged the defendant violated the UCL by failing to disclose the correct
16 annual percentage rate applicable to the plaintiffs' mortgage transaction.  The court explained that
17 the defendant applied an APR consistent with the relevant statutory provision governing such rates,
18 and therefore the defendant did not act unlawfully or misrepresent the applicable APR.  Accordingly,
19 the plaintiff's "conclusory allegations of alleged wrongful acts of unfair competition fail to state a
20 claim." *Santana,* 2009 WL 1657382, at *3.

21 In *Lopez v. Wachovia Mortg.,* No. C 10-01645 WHA, 2010 WL 2836823, at *6–7 (N.D. Cal.
22 July 19, 2010), the plaintiff alleged the defendant violated the UCL by misleading him into signing a
23 refinancing agreement which he believed would provide for a thirty-year fixed rate loan, when in fact
24 it provided for a more costly two-year fixed rate loan.  The court held the complaint failed to state a
25 UCL claim.  First, the complaint did not sufficiently allege the violation of any law, so the claim
26 under the "unlawful" prong of Section 17200 failed.  *Id.* at *6.  Second, the complaint failed to state
27 a claim under the "unfair" prong of Section 17200, because the term "unfair" means deceptive
28

conduct that injures consumers and competitors, and the "complaint fails to allege facts sufficiently demonstrating that defendant engaged in deceptive conduct that caused plaintiff injury." *Id.* (citation omitted). Third, to the extent the Section 17200 claim was predicated on the "fraudulent" prong of the statute, it failed because "Plaintiff did not plead with the requisite particularity the specific misrepresentations that are attributable to defendant and which individuals made them. Plaintiff's Section 17200 claim fails to satisfy the heightened pleading requirements of Rule 9(b) to state a cognizable claim based on the 'fraudulent' prong of the statute." *Id.* at*7.

In *Brumfield,* the plaintiffs alleged the defendant medical providers violated the UCL as a result of their failure to properly diagnose one of the plaintiff's diabetes and acted improperly in connection with an eye exam. The court held "Plaintiffs have not alleged any particular business practice or misleading advertising, let alone how that unidentified practice or advertising is unlawful, unfair or fraudulent. The omission of such allegations is unsurprising given that the gravamen of Plaintiffs' claims involve medical malpractice rather than a particular business practice." *Brumfield*, 2015 WL 294380, at *4.

Applying the above case law here, Plaintiff's UCL claim fails as a matter of law. From the face of the Complaint and the plain language of Plaintiff's insurance policy, Defendant did not, as a matter of law, act unfairly, unlawfully or fraudulently. Indeed, rather than misrepresenting anything, Defendant acted entirely consistently with the unambiguous policy terms. Plaintiff alleges Defendant acted wrongfully and violated the UCL in two ways. First, she claims Defendant improperly required Plaintiff to submit her health insurer's explanation of benefits showing its payment consideration of the relevant bills when, according to Plaintiff, the Coverage CX policy language does not contain such a requirement. Second she alleges Defendant declined to pay claims where a primary medical plan paid for the relevant medical treatment, but Plaintiff ultimately reimbursed the primary medical plan for the cost of such care, which she also claims is contrary to the terms of Coverage CX. Both allegations fail in the face of the clear and unambiguous language of Plaintiff's Allstate policy.

Plaintiff's claim that Defendant acted improperly by requiring Plaintiff to submit proof of her health insurer's EOB showing payment consideration of the applicable bills when there is no such requirement in the applicable policy is wholly negated by the policy's explicit "proof of loss" requirement. As noted above, that provision states, in relevant part: "any person making claim must give **us** written proof of claim. It must include all details **we** may need to determine the amounts payable." (Policy, AU104-3, p. 12, emphasis in original.) The requirement for Plaintiff to submit a proof of claim, including showing her health insurer's actions in connection with the subject medical bills, was therefore expressly provided in Plaintiff's insurance policy, as it was a detail Allstate stated it needed to adjudicate the claim. And there was simply nothing unlawful, unfair or fraudulent about requiring an insured such as Plaintiff to submit such documentation, as she was expressly informed by the policy she would have to do upon request, to enable Defendant to assess her claim to Coverage CX benefits.

Indeed, not surprisingly, proof of loss requirements have been repeatedly enforced under California law. *See, e.g., 1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.,* 135 Cal. App. 4th 1008, 1018 (2006) ("total failure to comply with the notice and proof of loss conditions will excuse insurer liability due to the failure of a condition precedent. . . . The burden is on the insured to initiate and support a claim.") (citations omitted); *Chierfue Her v. State Farm Ins. Co.,* 92 F. Supp. 3d 957, 972 (E.D. Cal. 2015) (same principle); *Abdelhamid v. Fire Ins. Exch.,* 182 Cal. App. 4th 990, 1000 (2010) ("The deficiencies in Abdelhamid's proof of loss were a far cry from minor defects and no reasonable trier of fact could conclude she substantially performed her obligations or complied with the condition of her insurance contract requiring her to provide a proof of loss with supporting documentation."). *See also* 13 Couch on Ins. § 186:22 (the purpose of a proof of loss is "to advise the insurer of facts surrounding the loss for which claim is being made, and to afford the insurer an adequate opportunity to investigate, to prevent fraud and imposition upon it, and to form an intelligent estimate of its rights and liabilities before it is obliged to pay.") (footnotes omitted); *Kagan v. Conseco Senior Health Ins. Co.,* No. 2:06-CV-801-GEB-EFB, 2006 WL 3039792, at *1 (E.D. Cal. Oct. 23, 2006) (agreeing with defendant insurer that plaintiff's lawsuit failed because

"Plaintiff has not provided Defendant with the proof necessary for Defendant to evaluate her claim," and stating "[c]ompliance with the formal [p]roof of [l]oss requirements is a well-established rule of law.") (citation and internal quotation omitted); *Goomar v. Centennial Life Ins. Co.,* 855 F. Supp. 319, 324 (S.D. Cal. 1994), *aff'd sub nom. Goomar By & Through Goomar v. Centennial Life Ins. Co.,* 76 F.3d 1059 (9th Cir. 1996) (finding plaintiff failed to support his disability claim since he failed to submit a proof of loss).  So, there was, as a ,matter of law, no UCL violation here when Allstate simply required Plaintiff to provide the proof of loss elements Allstate deemed necessary for Plaintiff to adequately support her claim to Coverage CX benefits.

Plaintiff's contention that Defendant violated the UCL by refusing to pay Coverage CX benefits where a primary medical plan paid for medical treatment and the Plaintiff reimbursed the primary medical plan from amounts she later recovered from the tortfeasor is equally flawed. Contrary to Plaintiff's contention, the plain terms of her insurance policy do not carve out any exception for situations where an insured has subsequently reimbursed the primary plan. The relevant provision makes clear that Coverage CX applies "on an excess basis only," and that "**Allstate** will not be liable to the extent that any elements of loss covered under Coordinated Medical Protection *are paid, payable or required to be provided* to or on behalf of **you** or a **resident** relative under the provisions of any and all **primary medical plans**. . . .  Coverage CX will apply on a primary basis to expenses *for elements of loss which are not covered* under the **primary medical plan** applicable to **you** or **resident** relatives."  (Policy, AU104-3, p. 4 (italicized emphasis added).) Here, the subject medical bills were, as is alleged in the Complaint, "paid, payable or required to be provided" by the primary plan.  And those bills were certainly "elements of loss which [were] covered" under the primary plan, since, as Plaintiff also expressly alleges, Kaiser paid for those elements.  The fact that Plaintiff may have later reimbursed Kaiser, presumably to satisfy a lien or subrogation right asserted by Kaiser, out of proceeds she subsequently recovered from the tortfeasor does not change the fact that the bills were paid for and covered by a primary medical plan.  There is simply no language in the insurance policy creating any ambiguity whatsoever as to whether the excess nature of Coverage CX is obviated in this situation.  It is not.

The Ninth Circuit's decision in *Roots* is directly on point and controlling here. As the Ninth Circuit expressly found, just because Plaintiff and her counsel may believe the application of the clear and unambiguous terms of Coverage CX is unfair, that does not create a cause of action under the UCL. 405 F. App'x at 122-23. Because Defendant's coverage position was entirely consistent with the unambiguous terms of Plaintiff's insurance policy, there was simply nothing fraudulent or unfair about it.

Nor was there anything unlawful about Defendant's alleged conduct. Plaintiff vaguely alleges Defendant violated Section 17500, precluding untrue or misleading advertising. (Compl., ¶ 38.) For all the reasons set forth above, however, there was nothing deceptive or untrue about Defendant's conduct. Defendant did exactly what was expressly provided for in Plaintiff's insurance policy -- *i.e.,* required proof of claim and declined to pay Coverage CX benefits where the bills at issue were paid for and covered by a primary medical plan. Plaintiff also alleges Defendant violated the "letter and spirit" of the federal Affordable Care Act, "requiring that all citizens be covered by health insurance," by "den[ying] Coverage CX benefits that should be available to anyone who is covered by health insurance." (Compl., ¶ 43.) But nothing Defendant did deprived Plaintiff of any health insurance required under the ACA. To the contrary, Defendant merely applied the Coverage CX provisions of Plaintiff's automobile insurance policy as written. The fact that Plaintiff may have reimbursed her health insurer from amounts she recovered from the tortfeasor does not mean she had no health insurance or that Defendant did anything to deprive her of that coverage.

To the extent Plaintiff is arguing Defendant is improperly rewarding insureds who "violate federal law" by not obtaining health insurance, that argument also fails. Defendant has no control over whether or for what reason an insured may or may not have health coverage. Any purported violation of the ACA due to an insured's failure to obtain health coverage is a violation by the insured, not Defendant.

In short, Defendant followed the plain language of the applicable insurance policy provisions to the letter, and there was nothing misleading, unfair or unlawful about Defendant's alleged conduct. And even if it were relevant, which it is not for all the foregoing reasons, Plaintiff here is,

according to the express Complaint allegations, not out of pocket for the subject medical expenses because Kaiser paid for them and then her reimbursement of Kaiser was included in the payment she received from the tortfeasor.

### B. Plaintiff Alleges No Basis For Restitution Or Injunctive Relief Under The UCL.

Plaintiff's UCL claim also fails because she alleges no basis for restitution or injunctive relief, which are the only forms of relief available under this statute. "The remedies an individual may seek under the UCL are limited to injunctive relief and restitution." *United States v. Sequel Contrs., Inc.*, 402 F. Supp. 2d 1142, 1156 (C.D. Cal. 2005); *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 455 (2005) ("[N]onrestitutionary disgorgement is not an available remedy in a UCL class action."); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) ("This court has never approved of nonrestitutionary disgorgement of profits as a remedy under the UCL.").

Plaintiff fails to identify any basis for restitution. "Restitution means the return of money to those persons from whom it was taken or who had an ownership interest in it." *Madrid*, 130 Cal. App. 4th at 455. *See also Lucas v. Breg, Inc.,* 212 F. Supp. 3d 950, 964 (S.D. Cal. 2016) ("The purpose of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership or vested interest."). "Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Korea Supply Co.*, 29 Cal. 4th at 1148. *See also Lucas.,* 212 F. Supp. 3d at 964-65 (a "plaintiff has an ownership interest in money or property when the money was once in plaintiff's possession and a defendant has taken it directly from plaintiff.").

Here, Plaintiff neither identifies any money that she paid to Allstate that must be restored, nor any funds in which she has a vested interest. Plaintiff conclusorily states she and the putative class "expended money for Coverage CX," and states she seeks "monetary relief including restitution." (Compl, ¶ 46; "WHEREFORE" clause.) But Plaintiff does not allege she is seeking return of premiums or anything she supposedly paid to Defendant. *Allstate Ins. Co. v. Barnett,* No. C-10-0077 EMC, 2011 WL 2415383, at *9 (N.D. Cal. June 15, 2011) ("Mr. Barnett points out that he has also

1 brought the § 17200 claim because he wants restitution -- namely, return of the premiums he paid.
2 The problem here is that Mr. Barnett's counterclaims as pled do not specifically identify this relief.").
3 Rather, Plaintiff simply seeks damages for Coverage CX benefits Defendant supposedly failed to
4 pay.  Yet, damages are not available under the UCL as a matter of well-settled law.  *Id.* at 1150
5 (although the UCL provides for restitution and injunctive relief, "it is well established that
6 individuals may not recover damages.").  *See also Gardner v. Safeco Ins. Co. of Am.*, No. 14–cv–
7 02024, 2014 WL 2568895, at *7-8 (N.D. Cal. June 6, 2014) ("Notably, courts have dismissed UCL
8 claims in insurance coverage cases where the plaintiff's proper remedy is to sue for breach of
9 contract to recover any benefits that are due under the policies. . . .  Gardner contends he has no
10 adequate remedy at law, but fails to explain how his alleged injury cannot be remedied by the
11 payment of damages."); *United States v. Sequel Contrs., Inc.*, 402 F. Supp. 2d 1142, 1156-57 (C.D.
12 Cal. 2005) (counter-claimant failed to state a claim for unfair competition because it did not request
13 restitution, but requested the same damages sought in its contract and negligence claims; stating, in
14 the context of the UCL, "restitution" is "limited to the return of property or funds in which the
15 plaintiff has an ownership interest. . . .  Damages are not an available remedy under the UCL," and
16 holding "JHTM fails to state a claim for restitution because JHTM does not allege any facts that
17 support a finding that JHTM has an ownership interest in property or funds in the County's
18 possession.  Instead, JHTM alleges that the County caused JHTM to incur payroll expenses and
19 suffer a decline in the value of its business.").

20      Nor does Plaintiff allege any basis for prospective or injunctive relief.  Because Plaintiff
21 seeks damages, she has an adequate remedy at law for any alleged harm to her.  (Compl., Prayer for
22 Relief.)  As a result, the equitable remedy of injunctive relief is improper.  *Wilkison v. Wiederkehr*,
23 101 Cal. App. 4th 822, 834 (2002); *see also Prudential Home Mortgage Co. v. Superior Court*, 66
24 Cal. App. 4th 1236, 1249-50 (1998) (striking request for injunctive relief under UCL because
25 plaintiff had an adequate remedy at law); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d
26 1241, 1259-60 (C.D. Cal. 2003) (plaintiff failed to properly allege a UCL claim because she failed to
27 plead the lack of an adequate remedy at law); *Stewart v. Life Ins. Co. of N. Am.*, 388 F. Supp. 2d
28

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

1138, 1144 (E.D. Cal. 2005) (dismissing UCL claim because "[p]laintiff does not claim she has no adequate remedy at law."); *Barnett*, 2011 WL 2415383, *9 (dismissing UCL claim for injunctive relief in part because plaintiff had an adequate remedy at law). Here too, Plaintiff does not allege she has no adequate remedy of law. And Plaintiff could not make such an allegation because, as the Court held in *Gardner*, she could have asserted a claim for breach of contract. Defendant disputes that Plaintiff could prevail on such a claim, but the point is that Plaintiff's Complaint is devoid of any claim that she has no adequate remedy at law, nor could she make such a claim, so injunctive relief is not available to her under the UCL.

## IV.  CONCLUSION

For all the foregoing reasons, Plaintiff's First Amended Complaint fails as a matter of law and should be dismissed.

Respectfully submitted,

Dated: September 5, 2017          DENTONS US LLP


By: _____*/s/ Sonia Martin*_____
       SONIA MARTIN

Attorneys for Defendant
ALLSTATE INDEMNITY COMPANY

104952264\V-1